UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAUL CASTALDI,

        Plaintiff,

      v.

SIGNATURE RETAIL SERVICES, INC.,

        Defendant.

Case No. 15-cv-00737-JSC

**ORDER RE: MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY CASE**

Re: Dkt. No. 29

        In this putative class action, Plaintiff Paul Castaldi ("Plaintiff") contends that his employer, Signature Retail Services, Inc. ("Signature Retail"), failed to pay overtime wages and failed to compensate employees for all hours worked in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. (*See* Dkt. No. 1.) Now pending before the Court is Signature Retail's Motion to Compel Arbitration and Dismiss or Stay Action pursuant to an arbitration agreement under which participating employees and Signature Retail agreed to submit employment-related disputes to binding arbitration. (Dkt. No. 29.) After carefully considering the parties' arguments, and having had the benefit of oral argument on October 15, 2015, and the parties' supplemental briefing on choice-of-law, the Court finds that Illinois law governs the enforceability of the Arbitration Agreement and that under Illinois law the Agreement's internal grievance procedure and cost-splitting provision are substantively unconscionable but nonetheless severable.

## BACKGROUND

        Signature Retail is an Illinois corporation engaged in the business of retail merchandising, sales, event marketing, and retail construction services that has several places of business in California. (Dkt. No. 1 ¶ 13.) Plaintiff is a resident of Rhode Island who worked as a Merchandiser for Defendant in the Providence, Rhode Island region and elsewhere between

United States District Court
Northern District of California

August 2013 and January 2015.  (Dkt. No. 1 ¶ 10.)

Before beginning his job with Signature Retail, on August 15, 2013 Plaintiff had a telephone interview with Signature Retail manager Dave Beatty.  (Dkt. No. 36-4 ¶ 4; *see also* Dkt. No. 43 ¶ 3.)  During the interview, Plaintiff and Mr. Beatty discussed Plaintiff's relevant experience and work ethic and Defendant's job expectations.  (Dkt. No. 36-4 ¶ 4.)  Mr. Beatty did not mention or explain arbitration during the call.  (*Id.* ¶ 5.)  By the end of the interview, which occurred on a Thursday, Mr. Beatty offered Plaintiff a job as a retail merchandiser starting the following Monday and told him that he would receive hiring documents via email.  (*Id.* ¶¶ 4, 6-7.)  Mr. Beatty explained that Plaintiff would have to print, sign, and fax back all of the documents before starting work.  (*Id.* ¶ 6.)  Thus, Plaintiff understood that he would have to return the signed documents the next day.  (*Id.* ¶¶ 6-7.)

Plaintiff characterizes the papers as a "stack" that cost him $30.00 to print and fax back to Signature Retail.  (*Id.* ¶ 8.)  According to Signature Retail's CFO, the welcome packet that Plaintiff received included: (1) a cover letter; (2) a new hire checklist with boxes to check off indicating the employee's completion of the other required forms; (3) an employment application; (4) a USCIS Form I-9 that the federal government requires for all new employees; (5) an IRS Form W-4 also required by law; (6) the Arbitration Agreement at issue here; (7) an emergency contact information form; (8) an EEO notice from the EEOC; (9) a document with excerpts to Signature Retail's employee handbook; (10) a Direct Deposit authorization form; (11) a summary of benefits; (12) an Affordable Care Act form; (13) a document regarding time and attendance reporting; (14) a document providing instructions for communications setup; (15) a document for reimbursement of employees' personal cell phones; and (16) a 2013 calendar showing pay days and holidays.  (Dkt. No. 43 ¶ 3; Dkt. No. 43-1.)[1]  Plaintiff signed and returned all of the

---

[1] Plaintiff objects to the Court's consideration of paragraphs 3 and 4 of the declaration of Signature Retail CFO Michael Chiapetta ("Chiapetta Declaration") in which Chiapetta describes the new employee packet and materials purportedly in Plaintiff's employee file. (Dkt. No. 45.) Plaintiff objects on the grounds that Mr. Chiapetta has not established personal knowledge and his statements lack foundation.  The Court will not consider Mr. Chiapetta's statement that there were only 34 pages total but for the purposes of explaining some of the types of documents included in the stack of papers that Plaintiff received.  Plaintiff also objects to portions of paragraphs 5 and 6 of the Chiapetta Declaration to the extent that they assert speculative conclusions about Plaintiff's

United States District Court
Northern District of California

documents the following day, including the Arbitration Agreement, which provides in relevant part:

> EMPLOYER and EMPLOYEE mutually agree that, to the fullest extent allowed by law, they shall submit all disputes arising out of the EMPLOYER/EMPLOYEE relationship will be conducted in accordance with the procedures, rules and regulations of the American Arbitration Association for a labor/employment dispute. The parties agree that the arbitration procedure is the sole and exclusive remedy for both EMPLOYER and EMPLOYEE. EMPLOYEE understands and agrees that by signing this agreement, EMPLOYEE is waiving his/her rights to have such claims decided by a federal or state agency or court. Claims which shall be decided by mandatory arbitration include, but are not limited to, any contract claims, whether express or implied, written or verbal, any tort claims, any claims of discrimination under federal, state or local statute, ordinance, regulation or rule, any claims for benefits, wages or compensation (except as otherwise provided by the express terms of any applicable benefit plan or as required by applicable law), retaliation claims, harassment claims, claims for compensation under federal, state or local statute, regulation, rule or ordinance, and any other claim under any federal, state or local statute, rule or ordinance whether related directly or indirectly to EMPLOYEE's employment with EMPLOYER. Except as required by law, covered claims include claims which EMPLOYEE may bring in his or her individual capacity or as a class representative or class member in a class action proceeding, or in any other capacity. **The parties understand and agree that they are giving up any right to have a covered claim decided by a judge or a jury (see paragraph 4 for claims not covered by this agreement).**

(Dkt. No. 32-1 ¶ 2 (emphasis in original.) The Arbitration Agreement further provided that any arbitration shall be governed by the rules and regulations of the American Arbitration Association ("AAA") and shall be conducted in DuPage County, Illinois. (*Id.* ¶ 6.) The Arbitration Agreement also includes a choice of law clause, which provides that Illinois law will apply to common law claims and Seventh Circuit law will apply to federal anti-discrimination or other federal claims. (*Id.* ¶ 8.)

The Agreement includes an internal dispute procedure, which requires employees—but not Signature Retail—to report their claims in writing to Signature Retail within 300 days of accrual. (*Id.* ¶ 5 (The EMPLOYEE must file a written grievance with the company within three hundred

---

state of mind. The Court will not consider Mr. Chiapetta's statements that Plaintiff read the Arbitration Agreement or that he "did not mindlessly check all the boxes" on the New Hire Checklist, as they are mere speculation. The Court will, however, note that Plaintiff signed the Arbitration Agreement and checked off the boxes on the New Hire Checklist.

days after the event claimed of.").)  "Failure to abide by these deadlines forecloses any

opportunity to pursue the claim or grievance."  (*Id.*)  Whatever statutory limitations period

otherwise applies for commencing arbitration.  (*Id.* ¶ 9.)

With respect to payment, under the terms of the Arbitration Agreement, the party bringing

the dispute must pay the filing fee.  (*Id.* ¶ 7.)  The parties will share the administrative fees equally

unless the employee is unable to pay, in which case the arbitrator may make a determination that

the fees should be divided in a manner less financially onerous to the employee.  (*Id.*)  In all

events, each party bears his/its own attorneys' fees and costs unless otherwise required by law.

(*Id.*)  Lastly, the Arbitration Agreement contains the following acknowledgement:

> EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS THE TERMS AND PROVISIONS OF THIS AGREEMENT. . . . Employee HAS SIGNED THIS AGREEMENT VOLUNTARILY . . . . Employee UNDERSTANDS THAT BY SIGNING THIS AGREEMENT HE/SHE IS GIVING UP RIGHTS TO HAVE ANY COVERED CLAIM DECIDED BY A COURT OR JURY.  Employee HAS BEEN GIVEN A FULL AND FAIR OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH PRIVATE LEGAL COUNSEL AND IS OTHERWISE FULLY ADVISED IN THE PREMISES.

(*Id.* at 3.)

Plaintiff signed and returned the Arbitration Agreement and the other documents.  (*See id.*

at 3; *see also* Dkt. No. 43-2.)  However, Plaintiff avers that he did not notice the Arbitration

Agreement, which was "somewhere in the middle of the stack" of papers without being flagged or

highlighted in any particular way, and has no memory of signing it.  (Dkt. No. 36-4 ¶¶ 9-10.)  He

further avers that he had not heard of arbitration before bringing this lawsuit, and that no one from

Signature Retail explained arbitration, provided information about the Federal Arbitration Act

("FAA") or AAA Rules, or explained the effect of the Arbitration Agreement.  (*Id.* ¶ 11.)  He

asserts that he had no time to speak with family members or anyone else about the documents

because he needed to return them the next day and needed the job.  (*Id.* ¶ 7.)

On February 17, 2015, Plaintiff filed the instant collective action complaint alleging

violations of the FLSA on behalf of all persons who worked as Merchandisers for Signature Retail

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1  since February 2012.  (*See* Dkt. No. 1 ¶ 12.)  The complaint alleges that Signature Retail failed to

2  pay overtime wages and failed to compensate Plaintiff and the other Merchandisers for all hours

3  worked in violation of the FLSA.  Signature Retail moves to compel arbitration and to dismiss or

4  stay this action in light of the Arbitration Agreement that Plaintiff signed.  (Dkt. No. 29.)  The

5  Court heard oral argument on the motion to compel on October 15, 2015.  Thereafter, the parties

6  submitted supplemental briefing on the question of choice of law—*i.e.*, which state's law should

7  apply to determine whether the Arbitration Agreement is enforceable.  (Dkt. Nos. 52, 53, 54.)

8  **LEGAL STANDARD**

9  The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2-16, provides that arbitration

10  agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or

11  in equity for the revocation of any contract."  Under the FAA, "arbitration agreements [are] on an

12  equal footing with other contracts," and therefore courts are required to enforce arbitration

13  agreements according to their terms.  *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 66

14  (2010).  "Like other contracts, however, they may be invalidated by 'generally applicable contract

15  defenses, such as fraud, duress, or unconscionability.'"  *Id.* (internal citations and quotations

16  omitted).

17  The FAA espouses a general policy favoring arbitration agreements.  *AT&T Mobility v.

18  Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 1745-46, (2011).  Federal courts are required to

19  rigorously enforce an agreement to arbitrate.  *See Hall St. Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S.

20  576, 582 (2008).  The court must direct parties to proceed to arbitration should it determine: (1)

21  that a valid arbitration agreement exists; and (2) that the agreement encompasses the dispute at

22  issue.  *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013); *Cox v. Ocean View

23  Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); *see also* 9 U.S.C. § 4 ("If a court . . . [is]

24  satisfied that the making of the agreement for arbitration or the failure to comply therewith is not

25  in issue, the court shall make an order directing the parties to proceed to arbitration in accordance

26  with the terms of the agreement.").  The party seeking to compel arbitration bears the burden of

27  proving the existence of a valid agreement by a preponderance of the evidence.  *See Bridge Fund

28  Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1005 (9th Cir. 2010).  Courts shall

resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

"If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967) (noting that "[o]nce [the court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of the agreement, the court must order arbitration).

## DISCUSSION

Signature Retail seeks to compel arbitration of Plaintiff's claims solely on an individual, and not collective or representative, basis pursuant to the Agreement.  Plaintiff, for his part, urges that the Agreement permits Plaintiff to bring a collective action but that it is nonetheless unenforceable as both procedurally and substantively unconscionable.  The Court will first address whether a valid arbitration agreement exists because if the answer is no, the Court need not decide whether the Agreement prohibits Plaintiff from pursuing collective claims in arbitration as a class representative.

**I.      Whether a Valid Agreement to Arbitrate Exists**

As arbitration is a matter of contract, a party cannot be required to arbitrate a claim that it has not agreed to arbitrate.  *AT&T Tech., Inc. v. Comm'cns Workers of Am.*, 475 U.S. 643, 648-50 (1986).  The FAA includes a "savings clause" that provides that arbitration agreements are unenforceable "upon such grounds as exist at law or equity for the revocation of any contract."  9 U.S.C. § 2.  "'[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening' federal law."  *Roe v. SFBSC Mgmt., LLC*, No. 14-cv-03616-LB, 2015 WL 9300683, at *5 (N.D. Cal. Mar. 2, 2015) (quoting *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)); *see also* Cal. Civ. Code § 1670.5.  However, these defenses only apply to the extent that they are not "applied in a fashion that disfavors arbitration."  *Concepcion*, 131 S. Ct. at 1748.

"To evaluate the validity of an arbitration agreement, federal courts [ ] apply ordinary

6

state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted). These principles "come from the law of a particular state—not federal general common law under the FAA." *Douglas v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 495 F.3d 1062, 1067 n.2 (9th Cir. 2007) (citation omitted).

### A.   Choice of Law

A preliminary issue is what law to apply to determine validity of the Arbitration Agreement.

#### 1.   *Contractual choice of law*

The Arbitration Agreement provides that "[a]ll common law claims shall apply Illinois law" and "[a]ll federal anti-discrimination or other federal claims shall apply the then applicable law within the United States 7th Circuit Court of Appeals." (Dkt. No. 32-1 at ¶ 8.) The choice-of-law provision could have stated that the agreement itself is governed by Illinois law; instead, it provides only that common-law claims brought pursuant to the arbitration agreement will be governed by Illinois law and federal claims by Seventh Circuit law. It is silent as to the law to govern the agreement itself. The validity of the Arbitration Agreement is neither a common law claim nor a federal claim; thus, the Agreement's contractual choice of law provision does not apply.

Defendant nonetheless insists that Illinois law must apply, citing cases involving the enforceability of forum selection clauses. (Dkt. No. 52 at 8.) In each of the cited cases, however, the contract itself stated that it was to be governed by a particular's state's law. *See, e.g., Gen. Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 358 (3d Cir. 1986) (contract stated that it was to be governed by Maryland law). Not so here. The Arbitration Agreement's choice-of-law provision does not apply.

#### 2.   *Section 1646 or governmental interest test*

A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. *Mortensen v. Bresnan Comm'cns, LLC*, 722 F.3d 1151, 1161 (9th Cir. 2013). Although jurisdiction in this case is based on both federal question (through the FLSA claims) and diversity

(based on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A)), both parties assume the choice-of-law rules of California—the forum state—apply.  So will the Court.

"The Ninth Circuit has recognized differences among California courts as to whether California's choice of law rule for contracts is the 'governmental interest' test or the test under Cal. Civ. Code § 1646."  *IBLC Abogados, S.C. v. Bracamonte*, No. 11-cv-2380-GPC-KSC, 2013 WL 3829401, at *5 (S.D. Cal. July 23, 2013); *see also Arno v. Club Med Inc.*, 22 F.3d 1464, 1468 n.6 (9th Cir. 1994) (reciting the different California cases).  Civil Code Section 1646 provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."  Cal. Civ. Code § 1646.  Section 1646's purpose "is to determine the choice of law with respect to the interpretation of a contract in accordance with the parties' presumed intention at the time they entered the contract."  *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal. App. 4th 1436, 1449 (2007). The *Frontier* court concluded that section 1646 "by its express terms establishes a choice-of-law rule only as to the interpretation of a contract[.]"  *Id.* at 1454.  The court also noted, however, that many California courts have applied section 1646 to determine choice-of-law issues other than interpretation of a contract, but have done so without explanation.  *Id.*  After reviewing the many California authorities applying the governmental interest test, California's "most prevalent modern choice-of-law rule[,]" the *Frontier* court concluded that section 1646 "still determines the law governing contract interpretation notwithstanding the application of the governmental interest analysis to other choice-of-law issues."  *Id.* at 1460.

Thus, Civil Code Section 1646 does not apply to the choice-of-law question here: which state's law governs the validity and enforceability of the Arbitration Agreement.  *See, e.g.*, *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010) (assuming that the governmental interest analysis governs the choice of law to decide the enforceability of an arbitration agreement); *Maxtor Corp. v. Read-Rite (Thailand) Co.*, No. C-03-3064 SC, 2003 WL 24902406, at *4-5 (N.D. Cal. Dec. 4, 2003) (applying governmental interest test to enforceability of a contract).  Defendant's insistence that an agreement's enforceability *is* a question about the interpretation of an agreement and therefore section 1646 applies is unpersuasive.  *Frontier*

8

specifically distinguished interpretation of a contract from an inquiry into the validity and enforceability of a contract.  153 Cal.App.4th at 1453-54 ("[Other opinions have cited section 1646 to support conclusions on choice-of-law issues *other than the law governing the interpretation of a contract* (e.g., . . . *Henderson v. Superior Court*, (1978) 77 Cal.App.3d 583, 592-593, 142 Cal. Rptr. 478 [validity and enforceability of a contract, . . .]), without explaining why a statute that by its express terms establishes a choice-of-law rule only as to the interpretation of a contract should determine other choice-of-law issues.") (emphasis added); *see also id.* at 1459 ("[W]e hold that the choice-of-law rule in Civil Code section 1646 determines the law governing the interpretation of a contract, notwithstanding the application of the government interest analysis to other choice-of-law issues.") (footnote omitted).  Section 1646 does not apply to the enforceability of the Arbitration Agreement.

### 3.   *Governmental interest analysis*

"[W]hen there is no advance agreement on applicable law, but the action involves the claims of residents from outside California, the trial court may analyze the governmental interests of the various jurisdictions involved to select the most appropriate law."  *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 915 (2001).  "Under the governmental interest analysis, California courts engage in a three-step process to determine whether a foreign state's law governs an issue in an action brought in California."  *Pokorny*, 601 F.3d at 994 (citing *Wash. Mut. Bank*, 24 Cal. 4th at 915).

> First, the court determines whether the relevant law of each potentially affected jurisdictions with regard to the particular issue in question is the same or different.  Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.  Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Pokorny*, 601 F.3d at 994-95 (internal quotation marks omitted) (quoting *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107-08 (2006)).  The party advocating the use of a foreign

9

state's law bears the burden of identifying the conflict between California and that state's laws and establishing that the foreign state has an interest in having its law applied. *Wash. Mut. Bank*, 24 Cal. 4th at 921. If the party fails to meet either of those burdens, the court "may properly find California law applicable without proceeding to the third step in the analysis." *Id.*

### a. Material difference

There are material differences between Illinois and California law regarding unconscionability. For example, while Illinois requires either procedural or substantive unconscionability, California requires both, albeit on a sliding scale for each kind. *Compare Kinkel v. Cingular Wireless LLC*, 223 Ill.2d 1, 21 (2006), *with Armendariz v. Found. Health Psychcare Servs., Inc.*, 23 Cal.4th 83, 114 (2000)). With respect to procedural unconscionability, while the overall definitions under both states' laws are similar, "Illinois law does not void contracts where parties have unequal bargaining power, even if a contract is a so called 'take-it-or-leave-it' deal[,]" *Sanchez v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 754 (N.D. Ill. 2015), while under California law "[a] finding of a contract of adhesion is essentially a finding of procedural unconscionability." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (citation omitted); *see also Aral v. EarthLink, Inc.*, 134 Cal. Ap. 4th 544, 557 (2005) (finding "quintessential procedural unconscionability" where "the terms of the [arbitration] agreement were presented in a 'take it or leave it' basis . . . with no opportunity to opt out").

With respect to substantive unconscionability, Illinois law is slightly more permissive of provisions that truncate statutes of limitations for employees than is California law. *Compare Country Preferred Ins. Co. v. Whitehead*, 979 N.E.2d 35, 41-41 (Ill. 2012) (parties may agree to shorten a limitations period if it is reasonable), *and 1000 Condo. Ass'n v. Carrier Corp.*, 180 Ill. App. 3d 467, 469 (1989) (upholding a contract that limited the time to file a cause of action to one year), *with Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 894 (9th Cir. 2002) (finding invalid a one-year statute of limitations on arbitrating employment claims), *and Asaad v. Am. Nat'l Ins. Co.*, No. C 10-03712 WHA, 2010 WL 5416841, at *7 (N.D. Cal. Dec. 23, 2010) ("There are multiple Ninth Circuit and California decisions holding that forcing employees to comply with strict limitations periods as long as one year for employment-related statutory claims is oppressive in a

1  mandatory arbitration context."). These differences suggest that the Arbitration Agreement is

2  more likely to be enforceable under Illinois law than under California law. Thus, the first prong of

3  the governmental interests test is met.

### b.      Each state's interest in having its law applied

5  The second prong analyzes "whether each of the states has a legitimate interest in the

6  application of the rule of the decision at issue." *Rasidescu v. Midland Credit Mgmt., Inc.*, 496 F.

7  Supp. 2d 1155, 1159 (S.D. Cal. 2007); *see also Hunter v. Citibank, N.A.*, No. C 09-02079 JW,

8  2011 WL 7462143, at *4 (N.D. Cal. May 5, 2011) (noting that, at the second step, the court

9  considers "what interest, if any, each state has in having its own law applied to the case") (citation

10  omitted). "[E]very state has an interest in having its law applied to its resident claimants." *Mazza*

11  *v. Am. Honda Motor Co.*, 666 F.3d 581, 591-92 (9th Cir. 2012). Here, Defendant is an Illinois

12  resident. Illinois has an interest in applying its unconscionability law because Signature Retail

13  Services is headquartered in Illinois and Illinois has an interest in providing companies within its

14  jurisdiction a uniform body of contract law on which they may rely when conducting their

15  business nationwide. *See Int'l Bus. Machs. Corp. v. Bajorek*, 191 F.3d 1033, 1042 (9th Cir. 1999)

16  (noting that a foreign state has a "considerable interest in providing coherent, predictable uniform

17  law governing" business for companies headquartered there). Defendant has therefore met its

18  burden of establishing that the foreign state has a legitimate interest in having its law of

19  unconscionability applied to the validity of the Arbitration Agreement.

20  On the other hand, California also has some interest in having its own law applied. While

21  the state "has a considerable interest in protecting its citizens from oppressive contracts imposed

22  by employers[,]" *id.*; *see also Mazza*, 666 F.3d at 591-92, the individual seeking to void the

23  Arbitration Agreement has no connection to California: he is a Rhode Island resident and was a

24  Rhode Island resident when the Agreement was executed and during his employment with

25  Defendant. Thus, California has little to no legitimate interest in protecting Plaintiff. *See Davison*

26  *v. Kia Motors Am., Inc.*, No. SACV 15-CJC(RNBx), 2015 WL 3970502, at *3 (C.D. Cal. June 29,

27  2015) (in consumer fraud case, noting that California has little interest in protecting consumers

28  who reside and purchased the product at issue outside of California) (citation omitted); *see also*

11

United States District Court
Northern District of California

1    *Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982) ("While protecting local investors is plainly a

2    legitimate state objective, the State has no legitimate interest in protecting nonresident[s].").  On

3    the other hand, Defendant appears to concede that it does business in California and, thus, that

4    some of its employees who are putative class members reside here.  However, there is no

5    indication in the record of how many California residents might be putative class members, or

6    what proportion of Defendant's employees are California residents compared to residents of

7    Illinois or other states. Thus, although California has some interest in protecting the possible

8    members of the putative class, this interest is speculative.

9          Courts have recognized that the "[a]s the forum state, California has an interest in applying

10   its law to [the] case." *Davis v. Advanced Care Techs., Inc.*, No. Civ. S-06-2449 RRB DAD, 2007

11   WL 2288298, at *6 (E.D. Cal. Aug. 8, 2007); *IBLC Abogados, S.C. v. Bracamonte*, No. 11-cv-

12   2380-GPC-KSC, 2013 WL 3829401, at *11 (S.D. Cal. July 23, 2013) (citation omitted).  This is

13   true even when neither party to the action is a California citizen.  *Columbia Cas. Co. v. Gordon*

14   *Trucking, Inc.*, 758 F. Supp. 2d 909, 916 (N.D. Cal. 2010) (noting that while usually "parties

15   seeking to invoke California law have genuine connections to the state[,]" nevertheless as the

16   forum state California retains an interest in having its law apply) (citations omitted).  However,

17   these cases generally note the forum state's interest based on the plaintiff's choice to file suit there

18   when it is the plaintiff—not the defendant, as here—who seeks to apply foreign law in the forum.

19   *See, e.g.*, *Bracamonte*, 2013 WL 3829401, at *11 ("Plaintiff chose the California court

20   understanding that that action would be taken into account in favor of applying California law.").

21   Thus, California's status as the forum provides only a minimal interest in having its own law

22   applied.  Based on this and the possibility that some class members reside in California and may

23   seek protection from the arbitration agreement at issue, the Court concludes that California also

24   has a legitimate interest in having its own law apply.

25                    **c.       Comparative impairment**

26          At step three, the Court balances the interest of the forum state with that of the Defendant's

27   proffered state to determine which would be more impaired by application of the other's law.

28   *Wash. Mut.*, 24 Cal. 4th at 920.  "[I]n conducting this evaluation the court does not weigh the

conflicting governmental interests in the sense of determining which conflicting law manifests the better or worthier social policy on the specific issue." *Kearney*, 39 Cal. 4th at 123 (quotation marks and citation omitted). Instead, the court must seek "to the extent practicable, to achieve the maximum attainment of underlying purpose by all government entities." *Id.* at 124.

Part of this analysis involves determining "the relative commitment of the respective states to the laws involved and consider[ing] the history and current status of the states' laws and the function and purpose of those laws." *Wash. Mut.*, 24 Cal. 4th 920. The court may also consider "each jurisdiction's relevant contacts with the parties, property, and the incident involved," *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1198 (S.D. Cal. 2007) (citation omitted), and "look to the reasonable expectations of the parties as to which state law would govern a dispute between them," *Waggoner v. Snow, Becker, Kroll, Kralis & Krauss*, 991 F.2d 1501, 1507 (9th Cir. 1993) (citation omitted).

Both Illinois and California have well-developed law governing unconscionability of contracts. *See Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1144 (2012) ("California law on unconscionability is well-established."); *Miller v. Miller*, 424 N.E.2d 1342, 1345 (Ill. 1981) (noting that unconscionability "is an established doctrine" in Illinois law) (citation omitted). As discussed above, both states have a strong policy against enforcing unconscionable contracts, although what constitutes an unconscionable contract differs somewhat between the two states. Because both policies are equally well-developed, both states have demonstrated a commitment to the law of unconscionability, which does not weigh in favor of applying the law of either state.

The Court next considers the "comparative pertinence" of each state's policy concerns to the instant case. *See Offshore Rental Co. v. Cont'l Oil Co.*, 22 Cal. 3d 157, 166 (1978). Illinois's interest stems from Defendant's corporate headquarters in that state, as well as the contract at issue being executed there, at least in part. While Defendant argues that Illinois's interests are also implicated because the Arbitration Agreement states that Illinois law will apply to common law claims brought thereunder, that argument puts the proverbial cart before the horse: the Court cannot give weight to a choice-of-law provision in a contract before determining whether the

United States District Court
Northern District of California

1  contract itself is enforceable.  California's interest is based on two factors: the case is pending

2  here, and some unknown number of putative class members resides in California.  The dispute

3  now before the Court, however, tests each state's interest in enforcing an agreement between an

4  Illinois resident and a Rhode Island resident. California has no interest in this particular dispute.

5  The Court therefore concludes that Illinois has a greater interest in applying its own law.

6        Plaintiff's remaining argument is unpersuasive.  Plaintiff urges that California's "robust

7  unconscionability laws" and strong public policy against certain unconscionable provisions

8  requires the Court to apply California law.  While Plaintiff is correct that under some

9  circumstances California choice of law rules require application of California law where applying

10  the foreign law would violate California public policy, such is not the case where, as here,

11  California has no interest in the contract at issue in the first place.  To hold otherwise would invite

12  plaintiffs everywhere to file suit in California courts whenever its laws offer more protection; this

13  type of forum shopping cannot be what the state's choice-of-law rules intend.

14                                      *   *   *

15        Applying California's governmental interest analysis leads to one conclusion: Illinois law

16  governs whether the Arbitration Agreement is enforceable.

17        B.    Unconscionability

18        Here, the parties agree that Plaintiff signed the Arbitration Agreement.  They dispute,

19  however, whether the Arbitration Agreement is nonetheless unconscionable and therefore

20  unenforceable.  Under Illinois law, a finding of unconscionability may be based on either

21  procedural or substantive unconscionability, or a combination of both."  *Kinkel v. Cingular*

22  *Wireless LLC,* 223 Ill.2d 1, 21 (2006)(citation omitted).

23               1.    *Procedural Unconscionability*

24        Procedural unconscionability refers to a contract "where a term is so difficult to find, read,

25  or understand that the plaintiff cannot be said to have been aware he was agreeing to it."  *Sanchez*

26  *v. CleanNet USA, Inc.*, 78 F. Supp. 3d 747, 754 (N.D. Ill. 2015) (citation omitted).  The procedural

27  unconscionability analysis also considers the disparity in bargaining power between the parties.

28  *Id.* (citation omitted).  "According to the Illinois Supreme Court, procedural unconscionability

14

1    boils down to impropriety during the process of forming the contract depriving a party of a

2    meaningful choice."  *Id.* (quotation marks and citation omitted); *see also Frank's Maint. & Eng'g,*

3    *Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 989 (1980).  "Factors to be considered in

4    determining whether an agreement is procedurally unconscionable include whether each party had

5    the opportunity to understand the terms of the contract, whether important terms were hidden in a

6    maze of fine print, and all of the circumstances surrounding the formation of the contract."

7    *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 777-78 (7th Cir. 2014) (citation omitted).

8          Plaintiff first argues that the contract was unconscionable because it was hidden in a

9    voluminous stack of documents and Signature Retail did not flag, highlight or otherwise

10   distinguish it for Plaintiff, so he "simply signed the hiring paperwork in order to have the job" and

11   was later surprised to learn about the Arbitration Agreement in the context of this litigation.  (*See*

12   Dkt. No. 36 at 16.)  Notably, the Arbitration Agreement itself is only two pages long and contains

13   an all-caps, boldfaced title with important provisions emphasized in bold or all-caps.  (*See* Dkt.

14   No. 32-1.)  It is not buried in small font in the context of a larger document that is unreasonably

15   long and therefore unlikely for Plaintiff to read.  *See Razor v. Hyundai Motor Am.*, 222 Ill.2d 75,

16   100 (2006) (finding arbitration provision unconscionable where contract itself did not reference

17   arbitration and the provision—not supplied until after the contract was signed—was so difficult to

18   find and read that the plaintiffs cannot fairly be said to have been aware that they were agreeing to

19   it); *Frank's Maint. & Eng'g, Inc.*, 86 Ill. App. 3d at 990 (arbitration provisions were printed on the

20   reverse of a contract and stamped over, suggesting that the language was irrelevant and could be

21   ignored).  While Plaintiff appears to argue that he did not read the contract before signing it, "in

22   the absence of fraud, [Illinois] law does not protect persons who choose not to read documents

23   given to them."  *Brown v. Luxottica Retail N. Am. Inc.*, No. 09 C 7816, 2010 WL 3893820, at *4

24   (N.D. Ill. Sept. 29, 2010); *see also Montgomery v. Corinthian Colleges, Inc.*, No. 11 C 365, 2011

25   WL 1118942, at *4 (N.D. Ill. Mar. 25, 2011) ("Defendants' employees had no obligation to

26   explain the arbitration provisions to Plaintiffs, and even if Plaintiffs did not read the provisions,

27   they still can be bound by them.") (citations omitted).

28          Plaintiff next argues that the Arbitration Agreement is procedurally unconscionable

United States District Court
Northern District of California

15

United States District Court
Northern District of California

because Signature Retail, a party with far more bargaining power, presented the contract as a condition of employment without giving Plaintiff any opportunity to negotiate the terms.  "Illinois law does not void contracts where parties have unequal bargaining power, even if a contract is a so called 'take-it-or-leave-it' deal." *Sanchez*, 78 F. Supp. 3d at 754 (quoting *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 367 (7th Cir. 1999)); *see also Melena v. Anheuser-Busch, Inc.*, 219 Ill.2d 135, 153 (2006) (noting that Illinois courts are "reluctant" to hold that "inequality in bargaining power alone suffices to invalidate an otherwise enforceable agreement") (citations omitted); *Weinreb v. Fannie Mae*, 993 N.E.2d 223, 235 (Ind. Ct. App. 2013) (disparity in bargaining power alone is not enough to make an adhesion contract unconscionable; there needs to be a showing of unwillingness or unawareness); *Williams v. Jo-Carroll Energy, Inc.*, 382 Ill. App. 3d 781, 787 (2008) ("[J]ust because a contract is prepared by a party in a superior bargaining position, without allowing the other party to negotiate any terms, does not mean that an included arbitration clause is unconscionable.") (citation omitted).  Instead, Illinois courts have long recognized contracts of adhesion as "a fact of modern life."  *Kinkel*, 223 Ill. 2d at 26; *Phoenix Ins. Co. v. Rosen*, 242 Ill. 2d 48, 72 (2011) (same) (citation omitted).

For example, in *Koveleskie*, the Seventh Circuit applying Illinois law rejected the very argument Plaintiff makes here.  The plaintiff argued that she was forced to execute a mandatory arbitration agreement as a condition of employment and that she had no bargaining power because she was an individual, compared to the business-entity employer.  167 F.3d at 367.  The Seventh Circuit held that these conditions were not unconscionable because "driving a hard bargain is not a wrongful act" and the "disparity of size of the parties entering into an agreement . . . without the wrongful use of that power" is insufficient to render the arbitration agreement unenforceable."  *Id.* (internal quotation marks and citation omitted).  Thus, the contract's adhesive nature and the parties' unequal bargaining power does not in and of itself render the contract procedurally unconscionable under Illinois law.

At oral argument, Plaintiff cited *Kinkel* for the proposition that a contract of adhesion is, in fact, procedurally unconscionable under Illinois law where the employee is not given an opportunity to negotiate.  Not so.  In *Kinkel*, "even when [the Illinois Supreme Court] found that

1    the contract at issue was a contract of adhesion, [its] finding that the contract represented a 'degree

2    of procedural unconscionability' was based not on that fact, but on the 'additional fact' that key

3    information was incorporated only by reference.'"  *Phoenix Ins. Co.*, 242 Ill.2d at 72-73 (citation

4    omitted).  Moreover, even in *Kinkel*, the court concluded that "the combined effect of these facts

5    . . . still created a degree of procedural unconscionability insufficient to render the contract

6    unenforceable"; instead, it was a factor to be considered "in conjunction with the claim of

7    substantive unconscionability."  *Id.* (citation omitted).  Thus, *Kinkel* does not support Plaintiff's

8    argument that the take-it-or-leave-it nature of the Arbitration Agreement as a condition of

9    employment renders the agreement procedurally unconscionable.

10         Plaintiff next argues that the Arbitration Agreement is procedurally unconscionable

11   because the contract required Plaintiff to agree to arbitration governed by AAA Rules and

12   therefore incorporated those rules into the contract, but did not provide Plaintiff a copy of them.

13   Plaintiff cites *Timmerman v. Grain Exchange, LLC*, 394 Ill. App. 3d 189 (2009), for the

14   proposition that failure to provide incorporated rules is a hallmark of unconscionability under

15   Illinois law.  While the *Timmerman* court did note that an arbitration provision was

16   unconscionable in part because the rules incorporated by reference were "not set forth in the

17   contracts, nor . . . provided to or made available to the plaintiffs prior to their entering into the

18   contracts[,]" that was not the focus of the court's unconscionability finding.  Instead, the court

19   noted that the arbitration provisions themselves were "the twenty-ninth rule in 61 pages of dual

20   column, single-spaced, fine print, with no demarcations differentiating it from other rules or

21   drawing attention to it."  *Id.* at 196-97.  Not so here, where the Arbitration Agreement is a separate

22   2-page document conspicuously titled as such.

23         On the other hand, the Arbitration Agreement was not negotiated between the parties, but

24   rather provided to Plaintiff as a condition of employment.  While the Arbitration Agreement was

25   not buried in fine print but instead in a separately-titled document, Plaintiff had only one day to

26   sign and return it, along with the other documents in the stack.  Taken together, the unequal

27   bargaining power between the parties, the take-it-or-leave-it nature of the contract, the short time

28   period that Plaintiff had to sign and return the agreement, and the fact that it incorporated rules

17

never provided to Plaintiff render the Arbitration Agreement procedurally unconscionable to a limited degree under Illinois law.  *See Jackson*, 764 F.3d at 777-78 (noting that courts must consider all of the circumstances surrounding an arbitration agreement); *see also Razor*, 222 Ill.2d at 99-100 (noting that a pre-printed contract that an individual had no opportunity to negotiate contributes to unconscionability).

At bottom, just as in *Kinkel*, that the Arbitration Agreement is a contract of adhesion that incorporated by reference AAA rules that were not included in the agreement itself results in a degree of procedural unconscionability that is not sufficient to render the agreement unenforceable, "but it is a factor to be considered in combination with" the conclusions on the question of substantive unconscionability.  *Kinkel*, 223 Ill. 2d at 27; *see also Bess v. DirecTV, Inc.*, 381 Ill. App. 3d 229, 240 (2008) (finding an arbitration agreement reflected "a degree of procedural unconscionability" but not enough to render it unenforceable).

### 2.    *Substantive Unconscionability*

Under Illinois law, substantive unconscionability "concerns the actual terms of the contract and examines the relative fairness of the obligations assumed[.]"  *Kinkel*, 223 Ill. 2d at 28 (internal quotation marks and citation omitted).  Indicia of substantive unconscionability include "terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity."  *Id.*  Plaintiff contends that a number of Arbitration Agreement provisions are substantively unconscionable.

### a.    **Internal grievance procedure**

The Arbitration Agreement requires an employee to submit a written grievance to Signature Retail within 300 days "after the event claimed of."  (Dkt. No. 32-1 ¶ 5.)  If the matter is not resolved with Signature Retail, the employee must request arbitration within the applicable statute of limitations for each claim.  (*Id.* ¶¶ 5, 9.)  The employee's failure to abide by these deadlines forecloses the employee's ability to pursue the claim.  (*Id.* ¶ 5.)  Plaintiff argues that this procedure operates to shorten the statute of limitations for employees only.  Plaintiff's FLSA claim, for example, has a statute of limitations of two years, or three years if the violation was willful.  *See Haro v. City of Los Angeles*, 745 F.3d 1249, 1252 (9th Cir. 2014).  Under the

United States District Court
Northern District of California

1  Arbitration Agreement, if an employee does not file a written wage and hour grievance with

2  Signature Retail within 300 days the employee loses his right to bring an FLSA claim.  (Dkt. No.

3  32-1 ¶ 5.)  Thus, the provision's effect is to reduce the statute of limitations for FLSA claims from

4  two or three years to less than one year.  Plaintiff cites *Severs v. Country Mutual Insurance Co*.,

5  89 Ill.2d 515, 34 N.E.2d 290 (1982) and *Kerouac v. Kerouac*, 99 Ill. App. 3d 254 (1981), for the

6  proposition that such a reduction in the statute of limitations is unconscionable.

7      While *Severs* and *Kerouac* could be distinguished on the grounds that in those cases the

8  reduction in the statute of limitations effectively barred the plaintiff from bringing suit, Signature

9  Retail does not contend that under Illinois law it is reasonable for an employer to shorten the

10  statute of limitations for an employee's wage and hour claims from three years to less than one, or

11  that it is reasonable to require the employee, but not the employer, to submit a grievance in

12  writing.  *See Razor*, 222 Ill.2d at 100 (holding that under Illinois law, arbitration provisions that

13  are "inordinately one-sided in one party's favor" are substantively unconscionable).  Instead,

14  Signature Retail insists that Paragraph 5 of the Arbitration Agreement is not mandatory and

15  instead merely "encourages" an employee to engage in the internal grievance procedure. (Dkt. No.

16  42 at 6-7.)  The Court disagrees.

17      By its plain terms Paragraph 5 requires an employee to bring a written grievance within

18  300 days of the event of which the employee complains or else forfeit his claim.  Paragraph 5

19  reads:

20          EMPLOYER is strongly committed to a problem solving procedure
            and encourages EMPLOYEE to utilize those procedures prior to
21          making a demand for arbitration.  EMPLOYEE understands that
            prior to making a demand for arbitration; EMPLOYEE *shall* abide
22          by the regulations, rules and procedures for resolving internal
            disputes.  The EMPLOYEE *must* file a written grievance with the
23          company within three hundred days after the event claimed of.
            Within 300 days of the company's receipt of the grievance, the
24          company shall issue a written response.  If the matter is not
            resolved, the EMPLOYEE *must* then file a written request for
25          arbitration with the American Arbitration Association of Chicago,
            Illinois within the time set forth in paragraph 9.  *Failure to abide by*
26          *these deadlines forecloses any opportunity to pursue the claim or*
            *grievance.*

27  (Dkt. No. 32-1 ¶ 5 (emphasis added).)  Although the paragraph begins by using discretionary

28

United States District Court
Northern District of California

19

United States District Court
Northern District of California

language such as "encourage," the remainder of the paragraph uses mandatory terms: employee *shall* abide by the procedures for resolving internal disputes; employee *must* file a written grievance within 300 days; and employee's failure to abide by these deadlines "*forecloses* any opportunity to pursue the claim or grievance."  Paragraph 5 forces the employee—but not the employer—to engage in the written grievance procedure which effectively truncates the statute of limitations for Plaintiff's claims here from three years to less than one year.  This inordinately one-sided provision is substantively unconscionable under Illinois law.  *See Razor*, 222 Ill.2d at 100.

### b.    Employee payment of arbitration costs

Under Illinois law, "a party seeking to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive bears the burden of showing the likelihood of incurring such costs."  *James v. McDonald's Corp.*, 417 F.3d 672, 679 (7th Cir. 2005) (internal quotation marks and citation omitted).  "[T]o invalidate an arbitration agreement based on the costs, there must be specific evidence establishing why arbitration would be prohibitively expensive."  *Baumann v. Finish Line, Inc.*, 421 F. App'x 632, 635 (7th Cir. 2011).  This requires plaintiff to produce evidence showing "why arbitration would be too costly but litigation in the courts would not be.  Without this information, the risk that arbitration would be prohibitively expensive is too speculative to justify the invalidation of an arbitration agreement."  *Id.* (internal quotation marks omitted); *see also see Kinkel*, 223 Ill.2d at 42 (finding an arbitration agreement unconscionable where the agreement's class-action prohibition and rules imposing a portion of the costs of arbitration on the claimant made it virtually impossible for the claimant to vindicate a small claim); *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 557 (7th Cir. 2003) (reversing trial court's denial of motion to compel arbitration where the plaintiff-employee had failed to show that the costs of arbitration would be prohibitively expensive where the defendant agreed to pay the costs of arbitration).  It is not enough that some of the arbitration costs will be imposed on the employee.  *See Bess*, 381 Ill. App. 3d at 241 (citation omitted).  While "[t]here is no bright line for determining when the costs associated with arbitration will be prohibitive, [ ] the Seventh Circuit has outlined two pertinent questions" to aid in the analysis: "(1) how the party's financial situation

United States District Court
Northern District of California

1    will be factored into an assessment of the arbitration costs" and "(2) how the costs will compare

2    between litigating in courts versus proceeding in arbitration." *Sanchez*, 78 F. Supp. 3d at 756

3    (citing *Baumann*, 421 F. App'x at 635); *see also James v. McDonald's Corp.*, 417 F.3d 672, 678-

4    80 (7th Cir. 2005) (same).

5         Plaintiff avers that his weekly net income is $525, that he owes $90 per month in child

6    support and also takes care of his adult brother. (Dkt. No. 36-4 ¶ 12.) The Arbitration Agreement

7    requires Plaintiff to pay the filing fee and provides that the parties will split equally all

8    administrative fees and costs associated with the arbitration. (Dkt. No. 32-1 ¶ 7.) Plaintiff has

9    also offered evidence that the AAA Employment Rules and the AAA Supplementary Rules for

10   class arbitration would make Plaintiff responsible for the entire filing fee of $200 for an individual

11   claim and $3,350 for collective action claims, and that under the Agreement he would be required

12   to split the final filing fee of $2500. (Dkt. No. 36-2 § 11(a); Dkt. No. 36-3 at 34-35.) Plaintiff

13   complains that these filing fees could rise to as much as $12,500. This amount does not even

14   include the arbitration costs (arbitrator fees, hearing room, etc.), which could be as much as

15   $40,000 for just Plaintiff's half share. Thus, Plaintiff has established that he will likely need to

16   spend thousands of dollars to arbitrate his wage-and-hour claims. In contrast, the federal court

17   filing fee is a flat $400 and the adjudication is free. Plaintiff need not pay for the judge's time or

18   the courtroom, nor for the court's administrative staff. Plaintiff has therefore shown that the costs

19   and fees associated with arbitration are prohibitively expensive as compared to the costs of

20   litigation. And indeed, Signature Retail has not offered any evidence to rebut Plaintiff's

21   estimation of arbitration costs or disputed his claim that such costs would be prohibitive.

22        Instead, Signature Retail urges that the costs can be reduced. To that end, the Arbitration

23   Agreement provides that the arbitrator may reduce the employee's fees upon a showing of

24   hardship. (Dkt. No. 32-1 at 2.) At oral argument, Defendant represented that the arbitrator retains

25   discretion not only to change the division of fees, but also to eliminate them in their entirety.

26   Some courts applying Illinois law have found that arbitration agreements that place costly burdens

27   on individuals are not substantially unconscionably if the agreements are governed by AAA Rules

28   that, as the Arbitration Agreement here, allow for filing and administrative fees to be reduced in

United States District Court
Northern District of California

cases of hardship. *James*, 417 F.3d at 679-80 (concluding that the AAA's hardship provision protected the plaintiff from incurring prohibitively expensive costs in part because the plaintiff had failed to adduce evidence that the costs were prohibitive); *Sanchez*, 78 F. Supp. 3d at 756 (same). But others have found that when an arbitration agreement provides for cost sharing, a provision that the arbitrator *may* reduce the claimant's costs is not enough to defeat unconscionability. *See Phillips v. Assocs. Home Equity Servs., Inc.*, 179 F. Supp. 2d 840, 846-47 (N.D. Ill. 2001) ("[D]efendants note that the arbitrator at his or her discretion can assess all expenses to one party at the conclusion of the case. But that is nothing more than an argument that there exists *some possibility* that [plaintiff] ultimately may not have to bear a prohibitively expensive portion of the arbitration costs. This is not enough to defeat [plaintiff's] evidence that she would have to expend thousands of dollars that she does not have in order to pursue her claim, with no solid way of getting the money back."). The *Phillips* court recognized that even if there is the possibility of some cost reduction, the risky nature of the reduction and the costliness of arbitration likely would deter a plaintiff from pursuing claims. *Id.* at 847 (citation omitted).

The Court is more persuaded by *Phillips* than *Sanchez*: the mere possibility that an arbitrator might reduce Plaintiff's claims is not enough to eliminate the prohibitive nature of the high costs associated with arbitration. Moreover, *James* is distinguishable, as there the plaintiff did not provide evidence of the comparative costs of arbitration versus court litigation. 417 F.3d at 679-80. Not so here. Thus, the costs and fees for arbitration that the Arbitration Agreement imposes on an employee are substantively unconscionable under Illinois law despite the possibility that the arbitrator has discretion to lower the employee's share of fees.

### c.        Unequal burden of travel fees and costs

Finally, Plaintiff argues that the forum selection clause setting arbitration in DuPage County, Illinois, is substantively unconscionable due to the cost of travel. Applying Illinois law, courts have found forum selection clauses unconscionable where they impose costs that would preclude the plaintiff from bringing claims. *See Williams*, 382 Ill. App. 3d at 788 (citation omitted). In other words, this is another iteration of the argument that the costs of arbitration would be "prohibitively expensive[,]" requiring specific evidence of the increase in costs.

1    *Baumann*, 421 F. App'x at 635.

2         Signature Retail is located in DuPage County, Illinois, the arbitration forum.  Plaintiff, an

3    individual of modest means, is located in Rhode Island.  Because arbitration requires in-person

4    participation, Plaintiff would incur additional travel and living expenses to attend arbitration there,

5    while Signature Retail would face no financial burden.  Thus, arbitrating in Illinois would be more

6    costly to Plaintiff than to Signature Retail.  But Plaintiff has not established that the travel cost

7    would be prohibitive.

8         And in any event, the second part of the inquiry requires the court to assess "how the costs

9    will compare between litigating in courts versus proceeding in arbitration."  *Sanchez*, 78 F. Supp.

10   3d at 756 (citation omitted); *Baumann*, 421 F. App'x at 635; *James*, 417 F.3d at 678-80.  Plaintiff

11   has chosen to litigate this case in California—much farther away from Rhode Island than Illinois,

12   and thus he is likely to incur even higher travel costs and fees.  While Plaintiff urges that he need

13   not be present for all aspects of litigation, this argument misses the mark: Plaintiff still must be

14   present for trial.  Thus, Plaintiff has not met his burden of establishing that the travel fees and

15   costs associated with the chosen arbitration forum are prohibitively expensive and higher than

16   those associated with litigating the matter here in court.  The forum selection provision is therefore

17   not substantively unconscionable in this particular case.

18              3.    *Severability*

19         The next issue is whether the Court can sever the substantively unconscionable terms.  "In

20   determining whether it is appropriate to sever an unconscionable provision from an agreement and

21   enforce the remainder of the agreement, Illinois courts are to consider whether the provisions

22   operate independently of each other or whether the valid provisions are "so closely connected with

23   unenforceable provisions that to do so would be tantamount to rewriting the Agreement."

24   *Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 379 Ill. App. 3d 214, 238 (2008) (internal

25   quotation marks and citation omitted); *see also Wigginton v. Dell, Inc.*, 382 Ill. App. 3d 1189,

26   1198 (2008) (same) (internal quotation marks and citation omitted).  "Also relevant is whether the

27   contract contains a severability clause."  *Wigginton*, 382 Ill. App. 3d at 1198; *see also Tortoriello*,

28   379 Ill. App. 3d at 239 ("The existence of a severability clause in a contract certainly strengthens

United States District Court
Northern District of California

23

the case for the severance of unenforceable provisions because it indicates that the parties intended for the lawful portions of the contract to be enforced in the absence of the unlawful portions.") (quotation marks and citation omitted).  The Arbitration Agreement contains a severance clause. (*See* Dkt. No. 43-2 ¶ 12 ("<u>Construction and Blue Penciling</u>: If any court of competent jurisdiction finds any part or provision of this agreement to be void, voidable or otherwise unenforceable, such findings shall not affect the validity of the remainder of the agreement and all other provisions shall remain in full force and effect.") (emphasis in original).)  However, the presence of such a clause is not dispositive.  *Wigginton*, 382 Ill. App. 3d at 1198.  When considering severance, courts should also keep in mind "the strong policy in favor of enforcing arbitration agreements, which is best served by allowing the valid portions of the arbitration agreement to remain in force while severing the unconscionable provision."  *Kinkel*, 357 Ill. App. 3d at 569.

Paragraph 5, the one-way internal grievance procedure, is severable.  Paragraph 5 can be eliminated in its entirety without impacting the central purpose of the Agreement—mutual arbitration—or requiring any rewriting of the enforceable terms.  Instead, after eliminating Paragraph 5, an aggrieved employee or employer must initiate arbitration within the applicable statute of limitations, the same as if the grievance were pursued in court.  Such a result is consistent with the Agreement's severance clause and "the strong policy in favor of enforcing arbitration agreements."  *Kinkel*, 357 Ill. App. 3d at 569.

The severability of the cost provisions of Paragraph 7 presents a closer question.  The parties do not cite, and the Court has not located, any cases applying Illinois law that address the issue.  *Cf. Marzano v. Proficio Mortg. Ventures, LLC*, 942 F. Supp. 2d 781, 796-97 (N.D. Ill. 2013) (declining to find cost-sharing provision substantively unconscionable because the arbitrator "may interpret the provision in a way that does not prevent Plaintiffs from vindicating their statutory rights" or "may sever the unenforceable provision") (citations omitted).

However, with respect to unconscionable cost-splitting provisions, courts, including those in California, have held that such cost-splitting provisions are severable.  *See, e.g., McManus v. CIBC World Mkts., Corp.*, 109 Cal. App. 4th 76, 101-02 (2003); *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 677-78 (6th Cir. 2003) (en banc); *Burgoon v. Narconon of N. Cal.*, No. C-15-

United States District Court
Northern District of California

1381 EMC, 2015 WL 5071982, at *12-13 (N.D. Cal. Aug. 27, 2015); *Laughlin v. VMware, Inc.*, No. 5:11-CV-00530 EJD, 2012 WL 298230, at *6-7 (N.D. Cal. Feb. 1, 2012).  Indeed, if the cost-splitting provision of Paragraph 7 is eliminated, the AAA rules which otherwise govern the arbitration provide that the employer "shall pay the arbitrator's compensation."  (Dkt. No. 36-3 at 34.)  This rule appears to apply whether the case is brought individually or as a class action.  (*Id.*)  Similarly, AAA rules require the employer to pay the daily hearing and room rental fee.  (*Id.* at 35-36.)  Finally, the rules require that all arbitrator expenses, "including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the employer."  (*Id.*)  Given that Signature Retail proposes that the offending cost-splitting provision may be severed (Dkt. No. 42 at 8), the Court assumes that it agrees that if the provision is severed it will pay the arbitration costs other than the filing fee.  *See Phillips*, 179 F. Supp. 2d at 846 (denying motion to compel arbitration on grounds that cost-splitting provision was unconscionable but offering to reconsider decision if the defendants "agreed to bear the costs associated with arbitration").  If Signature Retail believes otherwise, it must notify the Court in writing immediately.

If the Paragraph 7 provision requiring the initiating party to pay the filing fee is severed, AAA rules still require Plaintiff to pay the filing fee.  (Dkt. No. 36-3 at 34.)  The filing fee would be only $200 for individual arbitration, less than the federal court filing fee, and thus is not unconscionable.  If the case proceeds as a class action, Plaintiff must pay an initial filing fee of $3,350.  (Dkt. No. 36-2 at 6.)  Plaintiff will also be responsible for a supplemental filing fee based on the amount demanded on behalf of the class, which, according to Plaintiff, could be as high as $12,500.  (*Id.*; 36-3 at 38.)  While these class action filing fees are certainly beyond Plaintiff's reach, the Court does not find them unconscionable.  Should the class prevail, it will share these costs and Plaintiff offers no evidence that he, rather than his counsel, will bear the costs of initiating arbitration as a class action.  In sum, Plaintiff has not shown, and the Court is not persuaded, that these filing fees for class claims are so prohibitively high as to render the Arbitration Agreement unconscionable.  Thus, the Court will sever only the cost-splitting provision of Paragraph 7.

* * *

On the whole, there is a small degree of procedural unconscionability, though not enough to render the Arbitration Agreement unenforceable without a showing of substantive unconscionability, as well. *See Bess*, 381 Ill. App. 3d at 240. Paragraph five's one-sided mandatory internal grievance procedure and the cost-splitting provision of paragraph seven are substantively unconscionable under Illinois law. However, as these two unconscionable provisions are collateral to the core purpose of the Agreement and can be severed without requiring the Court to rewrite the Arbitration Agreement, the Court shall sever them and enforce the agreement to arbitrate.

## II.     Individual or Class Arbitration

In its initial moving papers Signature Retail asked the Court to compel Plaintiff to arbitrate his claims individually rather than on behalf of a class. Citing *AT&T Mobility v. Concepcion*, 563 U.S. 333 (2011), Signature Retail argued that because the Arbitration Agreement is silent as to whether an employee can bring a representative action the employee cannot. Signature Retail's reading of the Arbitration Agreement is wrong.

The Agreement is not silent as to class claims. To the contrary, it specifically provides that claims "which shall be decided by mandatory arbitration include . . . claims which EMPLOYEE may bring in his or her individual capacity or as a class representative or class member in a class action proceeding." (Dkt. No. 32-1 ¶ 2.) Signature Retail posits that this language does not contemplate class claims and instead merely broadens the definition of covered claims. (Dkt. No. 42 at 10.) The Court does not understand this argument. Covered claims are those subject to mandatory arbitration, and the Agreement provides that claims brought as a class representative are subject to mandatory arbitration. The only reasonable interpretation is that the parties agreed to arbitrate class claims, not that the parties waived their rights to bring class claims. In any event, to the extent there is any ambiguity, the ambiguity must be resolved against Signature Retail as the Agreement's drafter. *Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 115 Ill.2d 482, 493 (1987).

Signature Retail's reliance on *AT&T Mobility v. Concepcion* is misplaced. As the court in *Yahoo! Inc. v. Iversen*, 836 F. Supp. 2d 1007 (N.D. Cal. 2011) explained, "[t]he arbitration

United States District Court
Northern District of California

agreement at issue in *Concepcion* contained an express disclaimer of class arbitration, requiring that all claims be brought in the parties' 'individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.'" *Id.* at 1013 (quoting *Concepcion*, 131 S. Ct. at 1744).

Perhaps realizing the folly of its argument, in its reply memorandum Signature Retail changes its position and contends that the arbitrator, rather than this Court, should decide the availability of class arbitration, even though it was Signature Retail that asked this Court to resolve that question in the first instance. The Court agrees, although not for the reasons urged by Signature Retail. As discussed above, the Arbitration Agreement incorporates the AAA rules and regulations. Those rules include the AAA Supplemental Rules, submitted to the Court by Plaintiff. And the Supplemental Rules specifically provide that the arbitrator will decide the availability of class arbitration. (Dkt. No. 36-3 at 3.) Accordingly, the Court will grant the motion to compel arbitration without ruling whether the arbitration may be conducted as a representative action. *See Yahoo! Inc.*, 836 F. Supp. 2d at 1012.

### CONCLUSION

For the reasons described above, the Court finds the internal grievance procedure of Paragraph 5 and the cost-splitting provision of Paragraph 7 unconscionable and severs them from the Arbitration Agreement. As stated, upon severance the Court understands the AAA rules to require Signature Retail to pay all the arbitration costs, other than the filing fee. Signature Retail shall advise the Court in writing on or before January 15, 2015 whether it agrees with this interpretation.

**IT IS SO ORDERED.**

*Jacqueline Scott Corley*

JACQUELINE SCOTT CORLEY
United States Magistrate Judge